UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| **LARRY HENRY, individually and on behalf of all others similarly situated,**<br><br>v.<br><br>**CNX RESOURCES CORP.** | Docket No. 2:20-cv-553<br><br>**JURY TRIAL DEMANDED**<br><br>**CLASS/COLLECTIVE ACTION**<br><br>**PURSUANT TO 29 U.S.C. § 216(b)/ FED. R. CIV. P. 23** |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### I. SUMMARY

1. Larry Henry brings this lawsuit to recover unpaid overtime wages and other damages from CNX Resources Corp. under the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Stat. Ann. § 333.104.

2. Henry and the other workers like him regularly worked for CNX in excess of forty (40) hours each week. But these workers never received overtime for hours worked in excess of forty (40) hours in a single workweek.

3. Instead of paying overtime as required by the FLSA and PMWA, CNX improperly classified Henry and those similarly situated workers as independent contractors and paid them a daily rate with no overtime compensation. This class and collective action seek to recover the unpaid overtime wages and other damages owed to these workers.

### II. JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

5. The Court has federal jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d). The Court also has supplemental

jurisdiction over any state law sub-class pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division.

7. Henry worked for CNX in this District and Division and CNX conducts substantial business operations in this District and Division.

8. CNX also has its corporate headquarters in this District and Division in Canonsburg, Pennsylvania.

### III.   THE PARTIES

9. Henry worked for CNX as a Wellsite Supervisor from approximately June 2018 to May 2019.

10. Henry worked for CNX in southwest Pennsylvania.

11. Throughout his employment with CNX, Henry was paid a day-rate with no overtime compensation and was classified as an independent contractor.

12. Henry's consent to be a party plaintiff is attached as <u>Exhibit A</u>.

13. Henry brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid by CNX's day-rate system. CNX paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA and PMWA.

14. The class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All current and former workers that worked for or on behalf of CNX Resources Corp. who were classified as independent contractors and paid a day-rate during the last three (3) years. (**"Putative Class Members"**)**

15. Henry also seeks class certification of such a class under FED. R. CIV. P. 23 under the PMWA.

16. Defendants CNX Resources Corp is a Delaware corporation headquartered in Pennsylvania. CNX may be served through its registered agent for service of process, CT Corporation System, 116 Pine Street, #320, Harrisburg, Pennsylvania or wherever they may be found.

## IV. COVERAGE UNDER THE FLSA

17. At all times hereinafter mentioned, CNX has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

18. At all times hereinafter mentioned, CNX has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

19. At all times hereinafter mentioned, CNX has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as tools, cell phones, and personal protective equipment—that have been moved in or produced for commerce by any person and in that CNX has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

20. At all times hereinafter mentioned, Henry and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

21. As will be shown through this litigation, CNX treated Henry (and indeed all of its workers that it classified as independent contractors and paid a daily rate to without overtime compensation) as employees and uniformly dictated the pay practices of Henry and its other workers including those it misclassified as independent contractors.

22. CNX's misclassification of Henry and the Putative Class Members as independent contractors does not alter their status as employees for purposes of the FLSA or the PMWA.

3

**V.     FACTS**

23.     CNX is "one of the largest independent natural gas exploration, development and production companies in the Appalachian Basin."[1] To complete their business objectives, CNX employed independent contractors.

24.     Many of the individuals who worked for CNX, were paid on a day-rate basis, misclassified as independent contractors, and make up the proposed Putative Class. While the exact job titles and job duties may differ, the Putative Class Members are and were subjected to the same or similar illegal pay practices for similar work. These so-called independent contractors were paid a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) without any overtime pay for hours that they worked in excess of forty (40) hours in a workweek.

25.     For example, Henry worked for CNX as a wellsite supervisor from approximately June 2018 to May 2019. Throughout his employment with CNX, he was classified as an independent contractor and paid on a day-rate basis.

26.     The labor Henry performed was an essential and integral part of CNX's core business.

27.     While he was classified as an independent contractor, CNX exercised control over all aspects of his job.

28.     CNX did not require any substantial investment by Henry or the Putative Class Members for them to perform the work that was required.

29.     CNX determined Henry and the Putative Class Members opportunity for profit and loss. Henry and the Putative Class Members were not required to possess any unique or specialized

---

[1] https://www.cnx.com/operations (last visited April 13, 2020).

skillset (other than that maintained by all other employees in their respective position) to perform their job duties.

30. CNX and its clients controlled all the significant or meaningful aspects of the job duties performed by Henry and the Putative Class Members.

31. CNX and its clients determined the hours and locations Henry and the Putative Class Members worked.

32. Even though Henry and the Putative Class Members often worked away from CNX's offices without the presence of a direct supervisor employed by CNX, CNX still controlled all aspects of Henry and the Putative Class Members job activities by enforcing mandatory compliance with CNX and its client's policies and procedures.

33. CNX made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Henry and the Putative Class Members worked.

34. Henry and the Putative Class Members were economically dependent on CNX during their employment.

35. CNX set Henry and the Putative Class Members rates of pay, their work schedules, and prohibited them from working other jobs for other companies while they were working on jobs for CNX.

36. CNX directly determined Henry and the Putative Class Members opportunity for profit and loss. Henry and the Putative Class Members earning opportunities were based on the number of days CNX scheduled them to work.

37. Moreover, the job functions of Henry and the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

38. Henry and the Putative Class Members were not employed by CNX on a project-by-project basis. In fact, while Henry and the Putative Class Members were classified as independent contractors, they were regularly on call for CNX and/or its clients and were expected to drop everything and work whenever needed.

39. Henry and the Putative Class Members perform the same or similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person.

40. Henry and the Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

41. CNX's policy of failing to pay overtime to workers misclassified as independent contractors, including Henry and the Putative Class Members, violates the FLSA and PMWA because these workers are, for all purposes, employees performing non-exempt job duties.

42. Because Henry and the Putative Class Members were misclassified as independent contractors by CNX, they should receive overtime for all hours that they worked in excess of 40 hours in each workweek.

## VI.   FLSA VIOLATIONS

43. As set forth herein, CNX has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for their employment in excess of forty (40) hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

44. CNX knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Henry and the Putative Class Members overtime compensation. CNX's

failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

45. Accordingly, Henry and all those who are similarly situated are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

### VII.   PMWA Violations

46. Henry brings this claim under the PMWA as a Rule 23 class action.

47. The conduct alleged violates the PMWA (43 Pa. Stat. Ann. § 333.104).

48. At all relevant times, CNX was subject to the requirements of the PMWA.

49. At all relevant times, CNX employed Henry and the Putative Class Members as an "employee" within the meaning of the PMWA.

50. The PMWA requires employers like CNX to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) hours in any one week. Henry and the Putative Class Members are entitled to overtime pay under the PMWA.

51. CNX has and had a policy and practice of misclassifying Henry and the Putative Class Members as independent contractors and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

52. Henry and the Putative Class Members seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

53. Henry and the Putative Class Members also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by CNX, as provided by the PMWA.

### VIII. CLASS AND COLLECTIVE ACTION ALLEGATIONS

54. Henry incorporates all previous paragraphs and alleges that the illegal pay practices CNX imposed on Henry were likewise imposed on the Putative Class Members.

55. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and PMWA.

56. Numerous other individuals who worked with Henry indicated they were improperly classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

57. Based on his experiences and tenure with CNX, Henry is aware that CNX's illegal practices were imposed on the Putative Class Members.

58. The Putative Class Members were all improperly classified as independent contractors and not afforded the overtime compensation when they worked in excess of forty (40) hours per week.

59. CNX's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

60. Henry's experiences are therefore typical of the experiences of the Putative Class Members.

61. The specific job titles or precise job locations of the Putative Class Members do not prevent class or collective treatment.

62. Henry has no interest contrary to, or in conflict with, the Putative Class Members. Like each Putative Class Member, Henry has an interest in obtaining the unpaid overtime wages owed to them under state and/or federal law.

63. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

64. Absent this action, many Putative Class Members likely will not obtain redress of their injuries and CNX will reap the unjust benefits of violating the FLSA and applicable state labor laws.

65. Furthermore, even if some of the Putative Class Members could afford individual litigation against CNX, it would be unduly burdensome to the judicial system.

66. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

67. The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   a. Whether CNX employed the Putative Class Members within the meaning of the applicable state and federal statutes, including the FLSA and PMWA;

   b. Whether the Putative Class Members were improperly misclassified as independent contractors;

   c. Whether CNX's decision to classify the Putative Class Members as independent contractors was made in good faith;

   d. Whether CNX's decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

   e. Whether CNX's violation of the FLSA and PMWA was willful; and

   f. Whether CNX's illegal pay practices were applied uniformly across the nation to all Putative Class Members.

68. Henry's claims are typical of the claims of the Putative Class Members. Henry and the Putative Class Members sustained damages arising out of CNX's illegal and uniform employment policy.

69. Henry knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

70. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

## IX. JURY DEMAND

71. Plaintiff demands a trial by jury.

## X. RELIEF SOUGHT

72. WHEREFORE, Henry prays for judgment against CNX as follows:

   a. An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

   b. For an Order pursuant to Section 16(b) of the FLSA finding CNX liable for unpaid back wages due to Henry and the Putative Class Members for liquidated damages equal in amount to their unpaid compensation;

   c. For an Order designating the state law classes as class actions pursuant to Fed. R. Civ. P. 23;

   d. For an Order appointing Henry and his counsel as Class Counsel to represent the interests of the both the federal and state law classes;

   e. For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

   f. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ *Andrew W. Dunlap*
    Michael A. Josephson
    PA ID No. 308410
    Andrew W. Dunlap
    Texas Bar No. 24078444
    **JOSEPHSON DUNLAP LAW FIRM**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com

**AND**

Richard J. (Rex) Burch
Texas Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**AND**

Joshua P. Geist
PA. I.D. No. 85745
**GOODRICH & GEIST, P.C.**
3634 California Ave.
Pittsburgh, PA 15212
Tel: (412) 766-1455
Fax: (412)766-0300
josh@goodrichandgeist.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**