**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVISION**

| | |
|---|---|
| LARRY HENRY, individually and on behalf of all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>CNX RESOURCES CORP., )<br><br>Defendant. ) | Case No. 2:20-cv-00553-PLD |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CNX RESOURCES CORPORATION'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

Defendant CNX Resources Corporation ("Defendant" or "CNX"), by and through its attorneys, submit this Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint (Doc. No. 1, the "Complaint") Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## I.      INTRODUCTION

Plaintiff Larry Henry ("Plaintiff" or "Henry") contends, in conclusory fashion, that CNX misclassified him as an independent contractor and failed to pay him overtime in violation of the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA").  (Doc. No. 1, Compl. ¶ 1.)  The Court should dismiss the Complaint for two independently sufficient reasons: (1) for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) because Henry did not and cannot demonstrate that CNX "employed" him; and (2) Henry failed to plausibly state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

First, Henry has not established that this Court has subject-matter jurisdiction over Henry's overtime claims under the FLSA and PMWA.  CNX makes a factual challenge to subject-matter

jurisdiction, which allows the Court to look outside the pleadings.  "If [it] is a factual attack, however, it is permissible for a court to review evidence outside the pleadings." *United States ex rel. Atkinson*, 473 F.3d 506, 509 (3d Cir. 2007).  Moreover, the district court is free to weigh and evaluate the evidence in determining whether its jurisdiction has been demonstrated.  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  In this regard, the contract governing the consultant work Henry performed for CNX, for which he received over $1,300 per day, expressly avers that he was an independent contractor.  Along with other supporting documents, it establishes that Henry performed his work with little, if any, oversight, worked project-to-project, could turn down jobs without adverse repercussion, had a marketable skillset, invested in his consulting business, and was not otherwise economically dependent on CNX.  The substance of this contract and the complete absence of any facts plausibly suggesting that Henry was employed by CNX in the Complaint requires dismissal under Fed. R. Civ. P. 12(b)(1).

Second, the Complaint should also be dismissed under Fed. R. Civ. P. 12(b)(6).  The lesson of *Iqbal* and *Twombly* is that in order to state a claim under Fed. R. Civ. P. 8(a)(2), a complaint must substantiate its legal contentions with at least a few non-conclusory factual brushstrokes that bespeak plausibility.  The Complaint utterly fails to do so.  Instead, Henry did what the Supreme Court has squarely held is insufficient: file a complaint consisting entirely of conclusory, nebulous, or general allegations and formulaic recitations of causes of action.  Indeed, Henry does little more than parrot the Third Circuit's test to evaluate whether a worker is an independent contractor or employee.  The Complaint is replete with allegations such as CNX "controlled" Henry's duties, Henry was "economically dependent" on CNX, and Henry's work "was an essential and integral part of CNX's core business."  But these allegations are not entitled to the truth because they are

conclusory *legal* contentions unadorned by any concrete, non-conclusory subsidiary fact.  The same is true with respect to Henry's allegations concerning overtime and willfulness.

Accordingly, the Court should dismiss Henry's Complaint in its entirety.

## II.     BACKGROUND

### A.     HENRY'S MARKETING AGREEMENT WITH NEW TECH GLOBAL VENTURES, LLC.

Henry is a highly-paid, highly-skilled oilfield consultant, generating revenue of over $1,400.00 per day for his services.  Henry alleges that he worked for CNX from June 2018 through May 2019.  (Doc. No. 1, Compl. ¶ 25.)  What Henry omits is that during this time, he was working through New Tech Global Ventures, LLC ("New Tech"), a Consultancy Firm.

On or around April 11, 2018, Henry executed a Marketing Agreement with New Tech. New Tech provided certain services to Henry: namely, it processed and paid his invoices, provided general commercial liability insurance, and connected him with oil and gas exploration companies (called "Operators" in the industry).  (*See* Cress Decl., Ex. 1 ¶¶ 1, 5, 9.)  Concerning invoicing, the arrangement worked as follows: Henry provided professional consulting services to CNX; he generated and sent an invoice covering such services to New Tech; New Tech, in turn, paid this invoice and then invoiced CNX, at a slightly higher amount, and collected payment from CNX. (Cress Decl. ¶¶ 6-8; Beebe Decl. ¶ 15.)

Under the Marketing Agreement, Henry provided his services as "an independent contractor to Company [*i.e.*, CNX] and Marketing Agent [*i.e.*, New Tech]."  (Cress Decl., Ex. 1 ¶ 14.)  Henry was free to reject projects referred to him and "accept projects from other sources." (*Id*. ¶¶ 4, 14.)  Henry acknowledged that work "may be discontinuous with significant time elapsing between them", he was "not entitled to employee benefits provided to employees of Company", and he could not hold himself "out to be an employee of [the Operator.]"  (*Id*. ¶ 14.)

Further still, Henry expressly agreed that the Operator retained "no right to control [his] performance" and "[c]ontrolling the performance of the Assignment is solely [his] responsibility." (*Id*. ¶ 2.)  He was required "to maintain . . . evidence of professional qualifications and certifications, . . . required health, safety and educational requirements, and [] perform all Assignments in accordance with them."  (*Id*. ¶ 3.)  He was certified in Well Control and Safety. (Cress Decl., Ex. 6.)

It is through this strategic, triangular relationship that Henry began furnishing his consulting services to CNX, on or around June 2018.  (Doc. No. 1, Compl. ¶ 9.)  Henry's services commanded over $1,400.00 per day, of which he received $1,260.00 (New Tech received the difference for their administrative services).  (*See* Cress Decl., Ex. 3.)  In November 2018, Henry's earnings increased to $1,334.00 per day.  (*See Id*., Ex. 4.)  Henry stopped providing consulting services to CNX in May 2019.  (*See* Doc. No. 1, Compl. ¶ 9.)

**B.     HENRY'S CONCLUSORY ALLEGATIONS IN THE COMPLAINT.**

Despite expressly averring that he was an independent contractor of CNX, Henry also claims that he was "employed" by CNX.  (*Id.* ¶ 25.)  Henry brings this action on behalf of himself and "[m]any" unidentified individuals who allegedly provided services to CNX and were classified as independent contractors.  (*Id.* ¶ 24.)  Henry does not allege the job titles, duties, length of service, or location of work of these purported "similarly situated" persons.

While Henry parrots the Third Circuit's independent contractor test and claims he was employed by CNX, he fails to specifically allege any facts to support his claim that he was employed by CNX.  Henry claims that CNX "exercised control over all aspects of his job."  (*Id.* ¶ 27.)  But, tellingly, he does not provide a *single* non-conclusory allegation in support of this legal contention.  Instead, he makes vague allegations such as, "CNX and its clients controlled all the

significant or meaningful aspects of the job duties performed by Henry and the Putative Class members." (*Id.* ¶ 30.) Yet, Henry does not identify a single client or job duty. He also does not explain how "though [he] and the Putative Class Members often worked away from CNX's offices without the presence of a director supervisor employed by CNX," CNX was still able to control "all aspects" of his and the Putative Class Members' "job activities". (*Id.* ¶ 32.)

Henry also asserts that CNX set his pay, work schedules, and prohibited him from working for other companies. (*Id.* ¶ 35.) Henry does not square these allegations with the Marketing Agreement, which allowed Henry to work for competitors and turn down jobs. Nor does Henry reconcile this statement with the fact that he agreed to "split" his invoices with New Tech, which belies any notion that CNX exclusively set Henry's rate of pay.

The Complaint is replete with other vague, conclusory allegations. For example, without identifying a single task that he performed, Henry claims that his job functions "were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree." (*Id.* ¶ 37.) Henry also does not reconcile his apparent low-skilled work with the fact that he earned over $1,300 per day. (*See* Cress Decl., Ex. 4.) In sum, the Complaint is utterly devoid of any specifics pertaining to him, belied by undisputed evidence, and relies exclusively on regurgitating the independent contractor test while at the same time claiming he is an employee.

### III.   STANDARD

#### A.   FED. R. CIV. P. 12(b)(1).

A party may move for dismissal under Rule 12(b)(1) based on lack of subject-matter jurisdiction. On such a motion, "the plaintiff must bear the burden of persuasion." *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 191 n.4 (3d Cir. 2011), *rev'd on other grounds*, 569

U.S. 66 (2013).  No presumption of truthfulness is accorded to the plaintiff's allegations.  *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 509 (3d Cir. 2007).  Because the FLSA defines the federal courts' jurisdiction to hear FLSA cases by expressly limiting that jurisdiction to claims against "employers," *see* 29 U.S.C. § 216(b), a Rule 12(b)(1) motion to dismiss is proper if, as here, the defendant challenges the plaintiff's employee status.  *See Li v. Renewable Energy Solutions, Inc.*, No. 11-3589 (FLW), 2012 WL 589567, at *3–5 (D.N.J. Feb. 22, 2012).[1]

When faced with a Rule 12(b)(1) challenge to jurisdiction, the court "must start by determining whether [it is] dealing with a facial or factual attack to jurisdiction.  If [it] is a facial attack, the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff."  *United States ex rel. Atkinson*, 473 F.3d at 509.  A facial attack is considered under the same standard as a motion under Rule 12(b)(6).  *Willekes v. Serengeti Trading Co.*, 783 F. App'x 179, 183 (3d Cir. 2019).  "If [it] is a factual attack, however, it is permissible for a court to review evidence outside the pleadings."  *United States ex rel. Atkinson*, 473 F.3d at 509.  Moreover, the district court is free to weigh and evaluate the evidence in determining whether its jurisdiction has been demonstrated.  *Symczyk*, 656 F.3d at 191 n.4 (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

CNX makes a factual challenge to jurisdiction.[2]  This Court is thus "permitted to make factual findings, beyond the pleadings, that [a]re decisive to determining jurisdiction."  *CNA v. United States*, 535 F.3d 132, 145 (3d Cir. 2008).

---

[1] *See also Doe v. Four Bros. Pizza, Inc.*, No. 13 CV 1505 (VB), 2013 WL 6083414, at * 8–9 (S.D.N.Y. Nov. 18, 2013) (following *Li* and holding that Rule 12(b)(1) applied in FLSA action where defendant contended that it was not the plaintiff's employer).

[2] Given the Complaint's mere conclusory allegations as set forth herein, CNX likewise makes a facial challenge to jurisdiction because mere conclusory allegations are insufficient to support

**B.   FED. R. CIV. P. 12(b)(6).**

"To survive a motion to dismiss [under Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 544. "Where a complaint pleads facts that are merely consistent with a defendant's liability," this fails to "'nudge[] [a plaintiff's] claims . . . across the line from conceivable to plausible.'" *Iqbal*, 556 U.S. at 678, 680 (quoting *Twombly*, 550 U.S. at 570); *see Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).[3]

Accordingly, the inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory

---

jurisdiction. *Burgess v. Charlottesville Sav. & Loan Ass'n*, 477 F.2d 40, 43 (4th Cir. 1973); *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001).

[3] Under Rule 12(b)(6), courts consider documents forming the basis for the plaintiff's claims. *See Lum v. Bank of Am.*, 361 F.3d 217, 221, n.3 (3d Cir. 2004). Henry's claims are premised on the work he performed for CNX. Accordingly, in ruling on CNX's motion, the Court may consider documents establishing the terms and conditions of this work. "The purpose of this rule is to avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document." *Palmisano v. State Farm Fire & Cas. Co.*, No. 12-886, 2012 WL 3595276, at *14–15 (W.D. Pa. Aug. 20, 2012); *accord Yak v. Bank Brussels Lambert*, 252 F.3d 127, 128–31 (2d Cir. 2001) (district court properly relied on plaintiff's consulting agreement that was never referenced in her complaint: "[c]arefully avoiding all mention of the Consulting Agreements does not make them any less integral to her complaint."); *Bruger v. Olero, Inc.*, No. 19 CV 2277, 2020 WL 291362 (N.D. Ill. Jan. 21, 2020) (considering the independent contractor agreement in deciding motion to dismiss); *Perera v. H&R Block E. Enters.*, 914 F. Supp. 2d 1284, 1289 (S.D. Fla. 2012) (considering employment agreement for Rule 12(b)(6) motion even though not attached to complaint); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1327, at 762–63 (2d ed. 1990) ("[W]hen the plaintiff fails to introduce a pertinent document as part of her pleading . . . the defendant may introduce the document as an exhibit to a motion attacking the sufficiency of the pleading.").

allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  Concerning the first step, in order to state a claim under the FLSA, the plaintiff must show that "(1) the defendant was 'engaged in commerce' . . .; (2) he was an 'employee' as defined by the FLSA; and (3) he worked more than forty hours in a week but was not paid overtime compensation for the hours worked in excess of forty."  *Mell v. GNC Corp.*, No. 10-cv-945, 2010 WL 4668966, at *5 (W.D. Pa. Nov. 9, 2010).

## IV.    ARGUMENT

Henry has failed to do so.  The Complaint should thus be dismissed on multiple grounds: (A) Henry has not demonstrated under Rule 12(b)(1) nor plausibly alleged under Rule 12(b)(6) that he or anyone else was "employed" by CNX; (B) his overtime claims are implausible under 12(b)(6); and (C) his contention that CNX acted willfully is implausible under Rule 12(b)(6).

### A.    PLAINTIFF HAS NOT DEMONSTRATED NOR ALLEGED SUFFICIENT, NON-CONCLUSORY FACTS TO PLAUSIBLY ASSERT AN EMPLOYMENT RELATIONSHIP.

Determining the existence of an employment-employee relationship, under both the FLSA and PMWA, turns on whether a worker, as a matter of economic reality, is economically dependent on the alleged employer or is instead in business for himself.  *Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 229 (3d Cir. 2019).  This determination "does not depend on isolated factors but rather upon the circumstances of the whole activity."  *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1293 (3d Cir. 1991).  The Third Circuit has delineated six factors to guide the inquiry:

(1) the degree of the alleged employer's right to control the manner in which the work is to be performed;

(2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;

(3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;

(4) whether the service rendered requires a special skill;

(5) the degree of permanence of the working relationship; and

(6) whether the service rendered is an integral part of the alleged employer's business.

*Verma*, 937 F.3d at 229.

Thus, where a plaintiff's alleged employment status is challenged, courts faced with a Rule 12(b)(1) motion to dismiss analyze whether s/he can put forth a quantum of evidence satisfying this standard. Somewhat similarly, courts faced with a 12(b)(6) motion to dismiss analyze whether the complaint, *after sieving all conclusory statements*, plausibly alleges an employment relationship under this standard. *See, e.g.*, *Lepkowski v. Telatron Mktg. Group*, 766 F. Supp. 2d 572, 578–83 (W.D. Penn. 2011) (analyzing whether complaint stated enough plausible facts to allege employee-employer relationship under economic reality test); *Luxama v. Ironbound Exp., Inc.*, No. 11-cv-2244, 2012 WL 5973277, *3–8 (D.N.J. June 28, 2012) (same).

Accordingly, because Henry cannot establish and has failed to plausibly allege that *any* of these factors favor a finding of employee status, the Court can and should dismiss the Complaint under Rule 12(b)(1) and/or Rule 12(b)(6).

### 1. Plaintiff Has Not Demonstrated Nor Plausibly Alleged that CNX Controlled His Working Conditions.

*All* of the Complaint's allegations with respect to control state conclusions unadorned by subsidiary facts:

- "CNX exercised control over all aspects of [Plaintiff's] job." (Doc. No. 1, Compl. ¶ 27.)

- "CNX and its [unspecified] clients controlled all the significant or meaningful aspects of the job duties performed by Henry and the Putative Class Members." (*Id*. ¶ 30.)

- "CNX and its clients determined the hours and locations Henry and the Putative Class Members worked." (*Id*. ¶ 32.)

9

- While Plaintiff "often worked away from CNX's offices"—thus, implying that Plaintiff did not work on sites controlled by CNX—"CNX still controlled all aspects of Henry [*sic*] . . . job activities by enforcing mandatory compliance with CNX and its client's policies and procedures." (*Id*. ¶ 32.)

These generalized allegations of control should be disregarded because they are conclusory. *See Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010) ("conclusory allegations" should be disregarded).[4]  Merely stating that a defendant "controlled" a plaintiff's work in some vague manner does not plausibly suggest an employer-employee relationship. *See Luxama*, 2012 WL 5973277, at *4 (finding that allegation that defendant told plaintiffs "where to report to work. . . , what they will be paid[,] and where to pick up and delivery a particular container" insufficient to plausibly allege control); *Mell*, 2010 WL 4668966, at * 8 (dismissing plaintiff's complaint alleging FLSA violations where plaintiffs alleged that defendants "adopted a pervasive system to control overtime expense by requiring or suffering its employees to work off the clock . . . but they fail[ed] to provide any details about this system.").[5]

This is especially so because not all types of "control" exercised by a defendant evidence an employment relationship,[6] which led this Court in *Lepkowski* to dismiss a complaint because

---

[4] *See also Tracy v. NVR, Inc.*, 667 F. Supp. 2d 244, 247 (W.D.N.Y. 2009) ("[M]ere boilerplate allegations that an individual meets the various prongs of the economic reality test . . . without any supporting details—essentially 'a formulaic recitation of the elements of a cause of action'—are insufficient to raise plaintiffs' right to relief 'above a speculative level' with respect to [a defendant's] liability as an employer under the FLSA.").

[5] *See also Tillman v. La. Children's Med. Ctr.*, No. 16-14291, 2017 WL 1399619, at *2 (E.D. La. Apr. 19, 2017) (allegations that defendant exercised control "through . . . policies and procedures" was insufficient "to establish that defendant was an employer for purposes of FLSA"); *Altier v. Worley Catastrophe Response, LLC*, No. 11-241, 2011 WL 1791292, at *3 (E.D. La. May 9, 2011) ("The fact that Worley's employment agreements with Plaintiffs required Plaintiffs to comply with the terms and conditions imposed by BP is simply insufficient to survive BP's Motion to Dismiss.").

[6] *See Luxama*, 2012 WL 5973277, at *5 ("This factor may weigh against finding employee status when the putative employer exercises only minimal control over the putative employee").

the plaintiff failed to plausibly allege that he was an "employee" of the defendant under the FLSA. With respect to control, the plaintiff claimed that defendant "directly trains Plaintiff and other class members concerning [its] products, procedures, and protocols and oversees the day-to-day work of Plaintiff and other class members by, *inter alia*, monitoring the content of phone calls between the class members and [defendant's] customers to ensure that the class members are following detailed [defendant] procedures and protocols."  766 F. Supp. 2d at 579.  This Court held these allegations were insufficient to plausibly allege control because they tended to fall under "the type of quality control and customer service supervision that courts have consistently held to be 'qualitatively different' from the control exercised by an employer over an employee."  *Id*. at 580.

If the complaint's allegations in *Lepkowski* insufficiently alleged control, which contained at least a modicum of detail, it follows that the Complaint here, which is utterly threadbare, does not plausibly allege control.  The only allegation even approaching specificity in the Complaint concerning control is that Henry had to comply with "CNX and its client's policies and procedures"—without, of course, delineating what those policies or procedures were or how they entail "control".  But following policies and procedures, *at an oil-drilling site*, which can be quite dangerous, does not necessarily suggest employee status.  *See Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 382 (5th Cir. 2019) ("Requiring plaintiffs to undergo safety training and drug testing, when working at an oil-drilling site, is not the type of control that counsels in favor of employee status.").  It therefore does not render employee status more or less plausible.

Likewise, the bald assertion that CNX dictated Henry's hours and locations of work does not bespeak plausibility.  In *Luxama*, in finding that the plaintiff failed to plausibly allege an employment relationship, the court held:

> [T]his factor [*i.e.*, control] weighs in favor of identifying Plaintiffs as independent
> contractors for the following two reasons. First, "[m]erely setting a work schedule is

11

not sufficient to support a finding that a given person is an employee rather than an independent contractor." *Estate of Anthony J. Suskovich v. Anthem Health Plans of Va., Inc.*, 553 F.3d 559, 566 (7th Cir. 2009) . . . "Nor is the fact that a person is required to be at a given place at a given time or assigned . . . work sufficient to support an employee-employer relationship." *Ibid*. . . . Thus, Plaintiffs' argument that they are employees because the "drivers are told where to report to work . . . , what they will be paid and where to pick up and deliver a particular container" is unavailing.

2012 WL 5973277, at *4.  The same rationale compels a finding that Henry failed to plausibly allege that CNX "controlled" him in a way that suggests an employee-employer relationship.

Finally, the Marketing Agreement further renders Henry's conclusory allegations of control implausible, where he expressly agreed that he was an "independent contractor" and that the "Company [*i.e.*, CNX] retain[s] no right to control Consultant's [*i.e.*, Henry's] performance of the Assignment."  (*See* Cress Decl., Ex. 1 ¶¶ 1–2.)  This is consistent with Henry's allegation that he was not in the presence of a direct supervisor employed by CNX.  (Doc. No. 1, Compl. ¶ 32.)

This factor leans heavily in favor of contractor status under both 12(b)(1) and 12(b)(6).

### 2. Plaintiff Has Not Demonstrated Nor Plausibly Alleged That His Opportunity for Profit or Loss Was Entirely Dependent on CNX.

The profit and loss factor examines the extent to which the worker is able to make decisions that affect the amount of profit (or loss) he is able earn.[7]  This factor, like all other factors, must be evaluated in light of the ultimate question of economic independence.

The grand total of Henry's allegations concerning this factor is a conclusory regurgitation of the legal standard: "CNX determined Henry and the Putative Class Members opportunity for profit and loss."  (Doc. No. 1, Compl. ¶ 29.)  Henry does not allege a *single* subsidiary fact supporting this bald legal conclusion.  As such, Henry failed to plausibly allege that this factor favors employee status and it should be disregarded entirely.

---

[7] *See Zanes v. Flagship Resort Dev., LLC*, No. 09-3736, 2012 WL 589556, at *6 (D.N.J. Feb. 22, 2012) (citing *Martin*, 949 F.2d at 1294).

Moreover, further undermining the plausibility of this bald assertion is that the express terms governing his contractual relationship show that he had complete control over increasing his profit and revenue through business acumen.  Specifically, Henry was free to "decline any Assignment for any reason, including but not limited to the rate of compensation."  (Cress Decl., Ex. 1 ¶, 4; *see also id.* ¶ 1) [Henry free to turn down work].)  Thus, Henry could have increased his profits by simply choosing to consult on jobs that best suited his business needs.[8]

Accordingly, not only has Henry failed to plausibly allege that his profits and losses depended on CNX, but the evidence suggests that he cannot do so.  *See Luxama*, 2012 WL 5973277, at *5 (plaintiff had not plausibly alleged employee status under *Twombly* because contract governing work showed that he could increase "profits by acquiring additional trucks").

### 3.  Plaintiff Has Not Demonstrated Nor Plausibly Alleged that the Investment Factor Favors Employee Status.

The focus on the investments factor is whether the worker has made the kind of investments that might shed light on economic dependence.  To do this, a blind comparison of the size of the alleged employer's overall business operation and the contractor's business operation is unhelpful.  Rather, the investment factor considers whether the alleged employee made financial commitments in an attempt to generate a "return on . . . investment."  *Saleem v. Corp. Transp. Group, Ltd.*, 854 F.3d 131, 144 (2d Cir. 2017); *see also, e.g.*, *United States v. Silk*, 331 U.S. 704, 716 (1947) (affirming truck-drivers' independent contractor status when they, *inter alia*, "own[ed]

---

[8] *See Freund v. Hi-Tech Satellite, Inc.*, 185 F. App'x 782, 783 (11th Cir. 2006) (worker was an independent contractor because he was free to turn down jobs and could have increased profits by simply accepting more jobs); *Gate Guard Servs. L.P. v. Solis*, No. V-10-91, 2013 WL 593418, at *8 (S.D. Tex. Feb. 13, 2013) (oilfield workers were ICs because, *inter alia*, they could "increase their overall profits by taking jobs with other general contractors, landowners, or oil companies.").

their trucks").  To the extent there is a comparison at all, the comparison must be focused on the particular job site where Henry provided his consulting services.  *See Parrish*, 917 F.3d at 383.[9]

Moreover, the "nature of the industry" is relevant and may effectively vitiate this factor altogether.  *See, e.g.*, *Leffler v. Creative Health Servs.*, No. 16-1443, 2017 WL 4347610, at *5 (E.D. Pa. Sep. 29, 2017) ("While this factor is not significant given the fact that mental health therapy is not a profession requiring 'equipment and materials,' to the extent it is relevant, it too weighs in favor of independent contractor status."); *Meyer v. United States Tennis Ass'n*, 607 F. App'x 121, 123 (2d Cir. 2015) (holding that tennis umpires were independent contractors despite investing little in the U.S. Open, because they are free to decide independently each year whether to officiate, how many days they wish to officiate, and can serve as umpires for other tennis associations).[10]

Thus, because of the nuances of the investment factor, the Complaint's *sole* allegation addressing it—"CNX made the [sic] large capital investments in buildings, machines, equipment, tools, and supplied [sic] in the business in which Henry and the Putative Class Members worked"—is implausible on its face.  (Doc. No. 1, Compl. ¶ 33.)  It furnishes no detail indicating the amount of investment CNX places in the *specific jobs* for which Henry consulted (if any), fails to mention or discuss Henry's own investments, and does not provide any detail whatsoever to indicate whether this factor is relevant at all.  Without *any* factual allegations providing context, the Court is left guessing as to how to evaluate the sufficiency of the Complaint in light of the investment factor, and CNX is left to guess why Henry believes that this factor weighs in his favor.

---

[9] *See also Clay v. New Tech Glob. Ventures, LLC*, No. 16-296-JWD-CBW, 2019 WL 1028532, at *19 (W.D. La. Mar. 4, 2019) (analyzing relevant investments with respect to the "**specific job** the [alleged] employee undertakes" (emphasis added)).

[10] For example, the mere fact that a Fortune 500 company spends substantial sums on offices, equipment, and resources does not make it any more or less probable that it "employs" an outside counsel it retains for a specific case.  *See Meyer*, 607 F. App'x at 123.

14

Further, investment in certifications needed to perform a job militates in favor of contractor status, because it tends to show that the worker does not depend on the alleged employer.  *See Leffler*, 2017 WL 4347610, at *5 (finding this factor weighed contractor status where, *inter alia*, plaintiff was responsible for maintaining certifications); *see also Talbert v. Am. Risk Ins. Co.*, 405 F. App'x 848, 856 (5th Cir. 2010) (fact that plaintiff was a licensed worker who bore the cost of her own licensing weighed in favor of independent contractor status).   In order for Henry to consult, he needed to and did have certain wellsite certifications.  (*See* Cress Decl., Ex. 6.)  Thus, he made *investments* in himself to further his consulting business.  This tends to show that he is a contractor, as does his business decision to contract with New Tech to find him jobs.  *See Leffler*, 2017 WL 4347610, at *5; *Talbert*, 405 F. App'x at 856.

Accordingly, in light of Henry's conclusory allegations, and the record evidence, the Complaint has failed to plausibly allege that this factor suggests employee status.

### 4.  Plaintiff Has Not Demonstrated Nor Plausibly Alleged That the Skill Factor Favors Employee Status.

The skill prong focuses on whether the worker has a marketable skillset that an ordinary person, who merely performs routine work, does not.  For example, "courts have determined that the possession of a commercial driver's license is a special skill" favoring contractor status.  *See Luxama*, 2012 WL 5973277, at *6 (finding this factor weighed in favor of contractor status).

Here, Henry simply alleges: "Henry and the Putative Class Members were not required to possess any unique or specialized skillset (other than that maintained by all other employees in their respective position) to perform their job duties."  But this is merely a conclusory statement and, without more, should be disregarded.[11]

---

[11] Moreover, this statement is belied by relevant decisional law.  In *Parrish*, the Fifth Circuit—a court that regularly hears oilfield cases—recognized the "high-skill level" and "complicated work"

Further, Henry had to provide "evidence of professional qualifications and certifications" and was required to "maintain required health, safety and educational requirements." (Cress Decl., Ex. 1 ¶ 3.) He, in fact, did obtain certifications. (*See Id.*, Ex. 6.) Henry also warranted that he had the adequate resources, techniques and was fully trained to perform a job (*id.* ¶ 1), and was "an experienced independent professional" capable of "assess[ing] his own ability to perform the Assignment." (*Id.* ¶ 4.) If the consulting that Henry performed was unskilled—as his Complaint implies—there would have been no need for these provisions.

Finally, Henry ultimately earned $1,334.00 per day for his consulting work. (Cress Decl., Ex. 4.) It is facially implausible that a consultant who commands this type of income is a common, unskilled manual laborer, as Henry tries to make himself out to be in the Complaint. Indeed, the fact that he was able to generate this kind of income shows that he had a marketable skillset. Henry's attempts to deceive this Court fall flat.

Thus, it is utterly implausible that Henry was "unskilled" for purposes of the independent contractor/employee test.

### 5. Plaintiff Has Not Demonstrated Nor Plausibly Alleged That His Consulting Was Permanent.

Despite consulting for CNX for less than a year, Henry alleges that he worked on a permanent basis, without any concrete supporting facts. But where, as here, the relationship is nonexclusive, the permanency factor weighs in favor of independent contractor status.[12]

---

required by directional drillers. 917 F.3d at 386. Like *Parrish*, this case also involves a consultant, but one who was at an even higher level (wellsite supervisor) than the directional drillers in *Parrish*; Henry consulted on the entire drilling operation. For this reason (among others), wellsite supervisors have been found to be independent contractors. *See New Tech Global Ventures, LLC v. Bercier*, No. 4:19-cv-4423 (S.D. Tex. Feb. 13, 2020) (ECF Doc. No. 14) (upholding arbitral award finding that wellsite supervisor was independent contractor).

[12] *See Parrish*, 917 F.3d at 387; *Saleem*, 854 F.3d at 146 ("Because Plaintiffs were free under their franchise agreements to branch out on their own, or to drive for other, competing black-car

For example, in *Hickley v. Arkla Indus., Inc.*, the court found that although the plaintiff had performed services with the company for ten years, because he was capable of terminating the relationship upon 30 days' notice, the worker's *choice* to continue that relationship was akin to keeping a major client, not being employed by that client.  699 F.2d 748, 752 (5th Cir. 1983) ("Hickey's business and livelihood was only dependent upon Arkla as any business is 'dependent' upon a major customer, client, or supplier. . . . Moreover, it is clear that such a business relationship is not one which was contemplated by Congress when designing either the ADEA, or the FLSA on which we here draw for guidance in the determination of employee status.").

The plain terms of the Marketing Agreement show that Henry worked a project-to-project. Henry was free to "decline any Assignment for any reason, including but not limited to the rate of compensation."  (*See* Cress Decl., Ex. 1 ¶ 4.)  Furthermore, the Marketing Agreement could be "terminated without cause at any time by either party . . ." (*Id.* ¶ 5.)  Henry only received payment for work performed; he did not receive a "salary."  Thus, Henry's *economic reality* shows that he worked on a project-to-project, non-permanent basis.

In sum, Henry worked, and was paid, on a project-to-project basis, which strongly evidences that he was an independent contractor.  His conclusory allegations, which are belied by his Marketing Agreement, are insufficient as a matter of law to meet his burden.

### 6.   Plaintiff Has Not Demonstrated Nor Plausibly Alleged That His Consulting was an Integral Part of CNX's Business.

This factor focuses on whether the alleged employee performs "the primary work of the alleged employer." *Martin*, 949 F.3d at 1295–96.  The total sum of Henry's allegations concerning

---

companies, the degree to which these expenditures yielded returns was a function not only of CTG's network, but also of the business acumen of each Plaintiff, who thus had significant control over 'essential determinants of profits in [the] business.'").

this prong is that "[t]he labor Henry performed was an essential and integral part of CNX's core business." (Doc. No. 1, Compl. ¶ 26.) This is just a conclusion of law masquerading as a factual allegation and, thus, should be entirely disregarded.

Stripped of all conclusory facts with respect to this prong, Henry has not alleged a single *fact* in support of this factor. Accordingly, this factor favors contractor status.

### 7.  Other Considerations Make Plaintiff's Claims Implausible.

As shown above, Henry has failed to plausibly allege that *any* factor of the Third Circuit's independent contractor test favors a finding that he was "employed' by CNX. Other considerations likewise render Henry's conclusory contentions implausible.

*First*, how a worker is paid is relevant to the contractor/employee analysis. S*ee EEOC v. Zippo Mfg. Co.*, 713 F.2d 32, 38 (3d Cir. 1983) (where plaintiff was paid on a commission basis, rather than a salary, this tended to show that he was a contractor under the FLSA). Henry was only paid for days worked. He was not paid a salary, or even hourly, and was "not entitled to employee benefits provided to employees of Company [*i.e.*, CNX]". (Cress Decl., Ex. 1 ¶ 14.) This suggests that he was a contractor. *Zippo Mfg. Co.*, 713 F.2d at 38.

Moreover, if a worker is paid as a 1099 contractor, this, too, suggests that he is an independent contractor. *See Saleem*, 52 F. Supp. 3d at 540, *aff'd sub nom.*, 854 F.3d 131 (2d Cir. 2017) ("the fact that Plaintiffs classified themselves as independent contractors on their tax returns and took business deductions certainly weighs in favor of independent contractor status, as does the fact that drivers did not receive any benefits from Defendants"). Henry was paid as a Form 1099 contractor. (*See* Cress Decl., Ex. 5.)

*Finally*, the fact that Henry expressly averred that he was an independent contractor in his Marketing Agreement makes his allegations that he was an "employee" less plausible. (*See* Cress

Decl., Ex. 1 ¶¶ 1, 14) ["Consultant is an independent contractor to Company and Marketing Agent."].   While not dispositive, it is still relevant.   *See Saleem*, 854 F.3d at 141 ("Though an employer's self-serving label of workers as independent contractors is not controlling, such a designation . . . is pertinent to . . . the nature of the relationship.").

All of these facts render Henry's conclusory allegations even more implausible. Accordingly, Henry has failed to establish that this Court has subject-matter jurisdiction over his case—because there is no fact(s) alleged sufficient to conclude that he was "employed" by CNX— and he has failed to plausibly plead an employment relationship—thus, a dismissal under *Iqbal* is appropriate.   This court should thus grant CNX's motion under Rule 12(b)(1) *and* (b)(6).

**B.     PLAINTIFF HAS NOT ALLEGED SUFFICIENT, NON-CONCLUSORY FACTS TO PLAUSIBLY ALLEGE UNPAID OVERTIME UNDER EITHER THE FLSA OR PMWA.**

Henry also fails to state a plausible claim for unpaid overtime.   Thus, Henry's overtime claims under the FMLA and PMWA should be dismissed under Rule 12(b)(6).

To state a viable claim for overtime, a plaintiff must do more than plead vague and generalized allegations asserting violations of the overtime provisions of the FLSA. *See Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 242–43 (3d Cir. 2014).   In *Davis*, the Third Circuit held that it is not enough for a FLSA plaintiff to simply state that he regularly worked more than 40 hours in a week and was not paid overtime. *Id.*[13]   Rather, "a plaintiff must sufficiently allege [forty] hours of work in a <u>given</u> workweek <u>as well as</u> some uncompensated time in excess of the [forty] hours." *Id.* at 242–43 (emphasis in original); *see also Attanasio v. Cmty. Health Sys., Inc.*, No.

---

[13] The First, Second, and Ninth Circuits have also held that a plaintiff must do more than plead vague and generalized allegations asserting violations of the overtime provisions of the FLSA. *See Pruell v. Caritas Christi*, 678 F.3d 10, 13 (1st Cir. 2012); *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013); *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 644–45 (9th Cir. 2014).

3:11-CV-582, 2011 WL 5008363, at *6–8 (M.D. Pa. Oct. 20, 2011) (granting motion to dismiss for failure to state a claim in part because "[a] FLSA pleading requires some coherent approximation of the time owed.  Though the instant Pleadings do make globalized assertions as to the general loss suffered by the Plaintiffs, the facts alleged do not even attempt to offer any sort of individualized amount.").[14]

*Davis* compels dismissal of Henry's overtime claims.  Henry has wholly failed to "provide sufficient detail about the length and frequency of [his] unpaid work to support a reasonable inference that [he] worked more than forty hours in a given week." *Davis*, 765 F.3d at 243 (quoting *Nakahata*, 723 F.3d at 201); *see also Pruell*, 678 F.3d at 12 (affirming dismissal of amended complaint asserting FLSA claim because of "the lack of any information on plaintiff['s] approximate weekly wages and hours worked, or even an allegation that [he] had worked in excess of forty hours in any workweek").  He vaguely and generally alleges that he "worked in excess of 40 hours" and that he did not receive "overtime." (Doc. No. 1, Comp. ¶¶ 2, 13, 24, 40, 43, 50–52, 58.)  Such barebones allegations are mere recitations of the statutory language.  Likewise, Henry's use of phrases such as "regularly," "each week," and "in a single workweek" (*Id.* at ¶ 2) fail to

---

[14] *See also Landers*, 771 F.3d at 644–45 (holding that a plaintiff must, at the very least, estimate the length of her average workweek over a particular time period and the amount of overtime wages she is owed); *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87 (2d Cir. 2013) (affirming dismissal where allegations that the plaintiff worked "more than forty hours per week during 'some or all weeks' of her employment" and was not paid time-and-a-half for each hour in excess of 40 hours amounted only to a recitation of the statutory language of the FLSA and were insufficient to state a claim); *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114–15 (2d Cir. 2013) (finding that the plaintiffs failed to plead a plausible claim that the FLSA was violated because they had not alleged a single workweek in which they worked at least 40 hours and also worked uncompensated time over 40 hours); *Flores v. Act Event Servs., Inc.*, 55 F. Supp. 3d 928, 939–40 (N.D. Tex. 2014) (finding that plaintiffs allegations that they were required "to work at events for over forty (40) hours a week [but that defendant did not] pay them minimum wage or overtime for work done over forty (40) hours a week were merely "formulaic recitation[s] of the elements of a cause of action,' that were "not entitled to the assumption of truth.").

elevate his overtime claim beyond mere possibility and into the realm of plausibility.  "Under [Rule] 8(a)(2), a 'plausible' claim contains 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Davis*, 765 F.3d 242 (quoting *Iqbal*, 556 U.S. at 678).  Henry has simply not pled sufficient detail about the length and frequency of his alleged unpaid work or the amount of alleged overtime pay he is owed to support a plausible overtime claim. *See id. at* 243 (citing *Nakahata*, 723 F.3d at 201).[15]

Henry's overtime claims under the FLSA and PMWA should thus be dismissed under Rule 12(b)(6).

**C.  THE COURT SHOULD DISMISS HENRY'S LEGAL CONTENTION CONCERNING WILLFULNESS BECAUSE IT IS UNSUPPORTED BY ANY CONCRETE FACT(S).**

Henry contends that the FLSA's three-year statute of limitations should govern, as opposed to the two-year limitations period.[16]  In support, Henry makes a single, conclusory statement: "CNX knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Henry and the Putative Class Members overtime compensation." (Doc. No. 1, Compl. ¶ 44).  This should be rejected as facially implausible.

---

[15] *See also Pruell*, 678 F.3d at 12 (dismissing claims alleging that "putative class members 'regularly worked' over 40 hours a week and were not compensated for such time); *DeJesus*, 726 F.3d at89 (dismissing claims where plaintiff "alleged only that in 'some or all weeks' she worked more than 'forty hours' a week without being paid '1.5' times her rate of compensation"); *Hernandez*, 2015 WL 5608233, at *2 (dismissing FLSA claims when the plaintiff failed to allege details regarding his overtime claim, such as the dates, hours, or frequency of his overtime work); *Longoria v. KHM Rentals, LLC*, No. SA-13-CA-1143-FB, 2015 WL 12734176, at *3 (W.D. Tex. July 27, 2015); *see also Cook v. Flight Servs. & Sys. Inc.*, No. 16-15759, 2017 WL 1407808 (E.D. La. Apr. 20, 2017) (holding plaintiff's complaint was deficient for failure to provide the "approximate date ranges, as well as the approximate number of hours worked" for which the plaintiff claimed he was undercompensated").

[16] The FLSA imposes a general two-year statute of limitation, with a three-year limitations period for "a cause of action arising out of a willful violation" of the law. 29 U.S.C. § 255(a); *see McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

Ultimately, Plaintiff's willfulness allegation rests on a <u>single</u> conclusory statement that "[n]umerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and PMWA." (Doc. No. 1, Compl. ¶ 55.)  But this does not support a showing of willfulness. *See Mell*, 2010 WL 4668966, at *8 (finding willfulness claims inadequately pled because "there are no factual allegations which would support a claim that the violations were willful, for example, reports of complaints to supervisors about having to work off the clock which were rebuffed or ignored.").[17]  Rather, "[p]roof of willfulness must be far stronger, such as evidence that the defendant had previously been investigated for FLSA violations, or evidence of a scheme by the employer to cover-up FLSA violations." *Williams v. Md. Office Relocators, LLC*, 485 F. Supp. 2d 616, 621 (D. Md. 2007); *see also Hurd*, 2012 WL 642425, at *17 (willfulness only occurs when employers "ignored specific warnings that they were out of compliance with FLSA, destroyed or withheld records to block investigations into their employment practices, or . . . conceal their overtime work.").

No allegation in the Complaint even remotely suggests the type of "'stubborn non-compliance in the face of contrary judicial authority' required by the Third Circuit's jurisprudence" on FLSA willfulness claims. *See Wolfslayer v. IKON Office Solutions, Inc.*, No. 03-6709, 2004 WL 2536833, at *11 (E.D. Pa. Nov. 8, 2004). Because Henry's willfulness allegations do not plausibly suggest that CNX "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute," they should be dismissed. *Mell*, 2010 WL 4668966, at *8.

---

[17] *See also Hurd v. NDL, Inc.*, No. CCB-11-1944, 2012 WL 642425, at *18 (D. Md. Feb. 27, 2012) (holding allegation that defendants "'knew, or had reason to know' of their alleged FLSA violations" was not enough to show willfulness without "facts to support that conclusion").

**D.**   **DISMISSAL IS ESPECIALLY APPROPRIATE BECAUSE HENRY SEEKS TO REPRESENT A CLASS.**

The necessity of alleging a quantum of concrete subsidiary facts is even more necessary to plausibly allege an employment relationship and overtime violation where, as here, the named-plaintiff seeks to represent a class of similarly situated employees.  *See Attanasio*, 2011 WL 5008363, at *6–8 ("In failing to articulate any the details of the arrangement between the Plaintiffs and Defendants, the Court cannot resolve any quantum of plausibility from the Plaintiff's [FLSA] claims. . . . [T]his is not only necessary as a legal matter, but as a practical concern as well where the Plaintiffs are seeking to represent a broad class with notice to be distributed."); *Trevino v. RDL Energy Servs., L.P.*, No. H-14-1936, 2016 WL 11477431, at *22 (S.D. Tex. July 21, 2016).

Courts have thus found that a Rule 12(b)(6) analysis of class allegations is appropriate, even when the plaintiff has not yet filed a motion for conditional certification. *See Horowitz v. AT&T Inc.*, No. 3:17-cv-4827-BRM-LHG, 2018 WL 1942525, at 50–51 (D.N.J. Apr. 25, 2018) (collecting cases); *Huchingson v. Rao*, No. 5:14-CV-1118, 2015 WL 1655113, at *3–4 (W.D. Tex. Apr. 14, 2015) (collecting cases).  For example, dismissal of class allegations is appropriate when, as here, the plaintiff provides little more than a "nebulous class definition, without any facts showing job identifications, duties, and responsibilities of such a wide and presumably disparate putative class members, fails to state a class of similarly situated individuals under *Twombly* and *Iqbal*." *Trevino*, 2016 WL 11477431 at *22.

This compels dismissal of Henry's class allegations.  Henry pleads that he wishes to represent a class of "[a]ll current and former workers that worked for or on behalf of CNX [] who were classified as independent contractors and paid a day-rate during the last three (3) years." (Doc. No. 1, Compl. ¶ 14.)  Henry concedes, however, that members of the proposed class may have held different job titles and job duties, and fails to identify the purported class members' job

titles, job duties, their well site or work location, and even the basis of Henry's conclusory assertion that all members of the purported class performed "similar work" and were otherwise "similarly situated." (*Id.* at ¶ 24.)  Far from pleading specific facts sufficient to support a plausible collective action proceeding under the FLSA, Henry instead has pleaded specific facts tending to show that his collective action claims are not plausible under Rule 12(b)(6).

Moreover, Henry has not pleaded facts sufficient to show that he is an adequate class representative.  For example, he proposes a class of individuals allegedly employed within the past 3 years, but also explicitly pleads that he personally performed work for CNX only from June 2018 through May 2019. (Doc. No. 1, Compl. ¶¶ 9, 25.)  He has pleaded no facts demonstrating that his alleged employment was similar to the alleged employment of individuals who performed work for CNX before June 2018 or after May 2019.  Nor has Henry pleaded any specific, concrete facts plausibly suggesting that he is similarly situated to the proposed class members who worked at different well sites, held different titles, and performed different work.

This is a standing issue.  Henry at least must plead specific facts showing that he is qualified to represent all members of the proposed class and indicating that conditional certification would be plausible if those allegations were taken as true.  On its face, Henry has not pleaded facts which, even taken as true, indicate that he is an appropriate class representative and similarly situated to purported class members with different job titles, different job duties, and at different well sites and different work locations.

## V.    CONCLUSION

For all the above reasons, the Court should grant CNX's Motion to Dismiss Plaintiff's Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Respectfully submitted this 26th day of May, 2020.

**CHAMBERLAIN HRDLICKA**
  **WHITE WILLIAMS & AUGHTRY**

By:   */s/ Annette A. Idalski*
           Annette H. Idalski, *pro hac vice*
           Raed "Ray" Abilmouna, *pro hac vice*
           Kyle Winnick, *pro hac vice*
           191 Peachtree Street, N.E., 46th floor
           Atlanta, GA 30303-1747
           Telephone: (404) 658-5386
           annette.idalski@chamberlainlaw.com
           ray.abilmouna@chamberlainlaw.com
           kyle.winnick@chamberlainlaw.com

**DICKIE, MCCAMEY & CHILCOTE. P.C.**
           J.R. Hall
           PA ID No. 88296
           Two PPG Place
           Pittsburgh, PA 15222
           Telephone: (412) 392-5390
           jhall@dmclaw.com

           *Attorneys for Defendant CNX Resources*
           *Corporation*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on May 26, 2020, I served filed the foregoing with the Court's CM/ECF electronic filing system, which automatically generates notice and service upon all counsel of record.

By:   */s/ Annette A. Idalski*
      Annette A. Idalski

3484148.V2
3490442.V1

26